T.C. Memo. 2006-186

UNITED STATES TAX COURT

RUDOLPH HARRIS, SR., AND VERLINE HARRIS, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21486-03L.                    Filed August 30, 2006.

Rudolph Harris, Sr., pro se.

Monica J. Miller, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, Judge:  Pursuant to section 6330(d),[1] petitioners
seek review of respondent's determination regarding collection of
their 1995, 1996, 1997, 1998, and 1999 income tax liabilities.

---

[1] Unless otherwise indicated, all section references are to
the Internal Revenue Code.

FINDINGS OF FACT

At the time they filed the petition, Rudolph Harris, Sr., and Verline Harris resided in Tampa, Florida.  Mr. and Mrs. Harris filed Federal income tax returns reporting as follows:[2]

| Year | Tax | Withholding plus payments with return | Tax Due |
|------|------|------|------|
| 1995 | $3,461 | $1,761 | $1,700 |
| 1996 | 2,262 | 1,214 | 1,048 |
| 1997 | 2,591 | 518 | 2,073 |
| 1998 | 1,787 | 981 | 806 |
| 1999 | 3,555 | 2,761 | 794 |

According to Internal Revenue Service (IRS) transcripts of account, on or about October 29, 2001, the IRS received an offer-in-compromise (OIC) from Mr. and Mrs. Harris to settle their 1995, 1996, 1997, 1998, and 1999 tax liabilities (first OIC). The boxes for "Doubt as to Collectibility" and "Effective Tax Administration" are marked on the first OIC.  On March 29, 2002, the IRS rejected the first OIC.

On or about July 26, 2002, Mr. and Mrs. Harris submitted another OIC to settle their 1995, 1996, 1997, 1998, and 1999 tax liabilities (second OIC).  The boxes for "Doubt as to Collectibility" and "Effective Tax Administration" are marked on the second OIC.  At this time, Mr. and Mrs. Harris were 71 years

---

[2]  All amounts are rounded to the nearest dollar.

old, were retired, and had an adult child living with them who was a dependent for tax purposes. On the second OIC, Mr. Harris wrote: "As the record will verify, I am re-submitting this Offer in Compromise which will include basically statements of both our incomes. As you know Verline, my wife and I are both retired. I am also submitting copies of health status from our doctors."

On February 20, 2003, an entry was made on a 10-page document entitled "ICS History Transcript" (ICS transcript)-- which reflects Mr. and Mrs. Harris's collection case history. The entry states that Mr. Harris provided a statement from his doctor that Mr. Harris has severe osteoarthritis, he is totally disabled, and he cannot work. It also was noted that Mrs. Harris provided statements from two doctors. Mrs. Harris was diagnosed with a "non-Q wave myocardial infarction". She has a history of coronary artery disease, class 1 to 11 angina pectoris, a history of hyperlipidemia even on medication, a history of goiter, hypothyroidism even on medication, and insulin-dependent diabetes mellitus with diabetic retinopathy.

An undated and unsigned handwritten document regarding the reasonable collection potential for Mr. and Mrs. Harris's 1995, 1996, 1997, 1998, and 1999 tax years, prepared by a revenue officer,[3] lists $574 as available (presumably per month) for

---

[3] According to the ICS transcript, on Jan. 9, 2003, Aisha Akil was assigned to petitioners' case. Accordingly, Revenue
(continued...)

payment of the tax liabilities for these years.  This document appears to have been prepared in response to the second OIC as it notes "1000 offer 7/26/02, 95-99" at the top of the first page. It also notes "Updated medical info [illegible]".  The figures listed by the revenue officer in the "Claimed" and "Allowed R/O" columns for income and expenses are not supported by any original documentation.  The "Total RCP per Revenue Officer" is blank.[4]

On or about April 21, 2003, the IRS rejected the second OIC.

On or about June 13, 2003, respondent filed a Notice of Federal Tax Lien (NFTL), prepared and/or filed by Revenue Officer Akil, with the Clerk of the Circuit Court of Hillsborough County in Tampa, Florida.  The NFTL listed the unpaid balances as follows:  $399, $2,352, $3,757, $1,991, and $1,136 for 1995, 1996, 1997, 1998, and 1999, respectively (the NFTL lists a total unpaid balance of $9,635).

On June 19, 2003, respondent mailed Mr. and Mrs. Harris separate notices of Federal tax lien filing and Notices of Federal Tax Lien Filing and Your Right to a Hearing Under Section 6320.

---

[3](...continued)
Officer Akil appears to be the revenue officer who prepared this document as well as the entries on the ICS transcript after Jan. 9, 2003.

[4]  RCP would appear to stand for reasonable collection potential.

On July 14, 2003, Mr. and Mrs. Harris submitted a Form 12153, Request for a Collection Due Process Hearing, regarding the NFTL for 1995, 1996, 1997, 1998, and 1999.

On August 14, 2003, Appeals Officer Pamela Ludwig was assigned to Mr. and Mrs. Harris's hearing request. The Appeals officer's case activity record and case screening notes, which are scant, indicate that Mr. and Mrs. Harris are current in filing through tax year 2002, they do not have outstanding tax liabilities for any other periods, they had filed the two aforementioned OICs, and their balance due as of November 30, 2003, is $13,543--an increase of almost $4,000 since the filing of the NFTL 5 months earlier. According to the Appeals officer's case activity record, on October 3, 2003, the Appeals officer transferred the case to a settlement officer to be worked in conjunction with the appeal of the second OIC that was rejected on April 21, 2003.

Settlement Officer Peter Salinger was assigned to Mr. and Mrs. Harris's hearing request. The settlement officer also was assigned to the appeal of their second OIC. The settlement officer considered the second OIC as a collection alternative in connection with Mr. and Mrs. Harris's hearing request.

As part of the section 6330 proceedings, the settlement officer did not review or consider originals or copies of: The second OIC (i.e., the Form 656, Offer-in-Compromise); the

documents Mr. and Mrs. Harris previously submitted supporting the second OIC--i.e., Forms 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, or the medical records from the three doctors referred to in the body of the second OIC; or the income and expense worksheets.[5]

On November 24, 2003, respondent issued Mr. and Mrs. Harris a Notice of Determination Concerning Collection Action(s) Under Section(s) 6320 and/or 6330 determining that the NFTL would not be withdrawn.

OPINION

Section 6320 provides that the Secretary shall furnish the person described in section 6321 with written notice (i.e., the hearing notice) of the filing of a notice of lien under section 6323. Section 6320 further provides that the taxpayer may request administrative review of the matter (in the form of a hearing) within a 30-day period. The hearing generally shall be conducted consistent with the procedures set forth in section 6330(c), (d), and (e)--which provide for, among other things, the conduct of the hearing, the making of a determination, and jurisdiction for court review of the section 6330 determination. Sec. 6320(c).

---

[5] Respondent submitted an affidavit of the settlement officer listing the materials he reviewed before the determination was made in this case. Neither the settlement officer nor any other IRS employee testified at trial.

Pursuant to section 6330(c)(2)(A), a taxpayer may raise at the section 6330 hearing any relevant issue with regard to the Commissioner's collection activities, including spousal defenses, challenges to the appropriateness of the Commissioner's intended collection action, and alternative means of collection. Sego v. Commissioner, 114 T.C. 604, 609 (2000); Goza v. Commissioner, 114 T.C. 176, 180 (2000). Mr. and Mrs. Harris are not challenging their underlying liabilities. See sec. 6330(c)(2)(B). Therefore, we review respondent's determination for an abuse of discretion. See Sego v. Commissioner, supra at 610.

Respondent stated that the settlement officer considered Mr. and Mrs. Harris's second OIC as part of their section 6330 hearing. Respondent relies on Schenkel v. Commissioner, T.C. Memo. 2003-37, for the proposition that there was no abuse of discretion in this case. Schenkel, however, is distinguishable from the case at bar.

In Schenkel, the Appeals officer received a completed Form 433-A directly from the taxpayer. The taxpayer listed his assets, his monthly income, and his total monthly living expenses. The Appeals officer reviewed the taxpayer's OIC considering all the financial information the taxpayer submitted. The Appeals officer himself calculated the taxpayer's total allowable monthly living expenses. Upon an independent review of the underlying documentation, the Appeals officer concluded that

the taxpayer's OIC was unacceptable because the taxpayer could pay his full tax liability within the period of limitations for collection.

In this case, the settlement officer did not conduct an independent review.  Although the settlement officer reviewed documents prepared by respondent's agents regarding the second OIC, the settlement officer did not review the second OIC and/or the documents supporting the second OIC--the Forms 433A and 656, the income and expense worksheets, and the medical records. Instead, the settlement officer relied solely on the conclusory, undocumented, and unsupported figures from the handwritten determination of reasonable collection potential prepared by the revenue officer.

Accordingly, we conclude that, unlike the Appeals officer in Schenkel, the settlement officer in this case did not conduct an independent administrative review of the rejection of the OIC. Sec. 7122(d)(1).  Additionally, the evidence does not establish that the settlement officer prepared a monthly income and allowable expense analysis based on all of the information Mr. and Mrs. Harris provided or that the figures the settlement officer relied on represented national standard expenses.  Sec. 7122(c)(2); sec. 301.7122-1(b)(2), (k), Proced. & Admin. Regs. (the regulation applies as the OIC in issue was pending or submitted on or after July 18, 2002).

The officer or employee of Appeals conducting a section 6330 hearing cannot turn a blind eye to or ignore relevant documents in the Commissioner's possession--especially when those documents are specifically mentioned in other documents the officer or employee of Appeals reviews or the officer or employee of Appeals knows the documents exist.  Upon the basis of the foregoing, we conclude that the determination for the years in issue was an abuse of discretion.[6]

To reflect the foregoing,

Decision will be entered

for petitioners.

---

[6] Additionally, respondent conceded at trial and on brief that Mr. and Mrs. Harris's 1995 tax liabilities have been fully satisfied.